ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| LOS ALISIOS, LLC<br><br>Apelado<br><br>v.<br><br>II2, LLC Y OTROS<br><br>Apelantes | TA2026AP00556 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2026CV02601<br><br>Sobre: Desahucio y cobro de dinero |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de junio de 2026.

Comparece la parte demandada y apelante, II2 LLC, y nos solicita revocar la *Sentencia* emitida y notificada el 22 de mayo de 2026, por el Tribunal de Primera Instancia, Sala de San Juan (TPI). Mediante su dictamen, el TPI declaró *ha lugar* la causa de acción de desahucio de la *Demanda* instada por la parte demandante y apelada, Los Alisios LLC.

Anticipamos la confirmación del dictamen por los fundamentos que expondremos más adelante.

**I.**

La causa presente comenzó el 7 de abril de 2026, ocasión en que Los Alisios presentó una *Demanda de Desahucio Cobro de Dinero* en contra de II2 y Ricardo A. Prado del Valle, garantizador personal de las obligaciones corporativas.[1] En esencia, alegó que, el 25 de abril de 2025, suscribió un contrato de arrendamiento por cinco años con II2, para arrendar una propiedad comercial conocida como Edificio Las Nubes.[2] Sostuvo que II2 incumplió con el pago de ciertas partidas, a saber: el canon de arrendamiento, los gastos de mantenimiento, el estacionamiento y otros cargos aplicables. Conforme lo pactado, indicó

---

[1] Entrada 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).
[2] Véase, documento intitulado *Lease* anejado en la entrada 1 SUMAC-TPI.

que con cada impago después del día quinto del mes se incurría en una penalidad de $250 mensuales. Adujo ser acreedor de una deuda líquida, vencida y exigible ascendente a $16,875.69 por concepto de cánones y cargos en atraso; suma que, según lo acordado, generaba intereses a razón del 12% anual.

Además, en atención a las cláusulas contractuales, alegó una causa de acción en daños de $373,737.60 por el quinquenio en que no devengaría los cánones contratados; éstos son: (1) por lo restante del primer año $7,167.55; (2) por el segundo año $88,190.67; (3) por el tercer año $90,422.69; (4) por el cuarto año $92,758.52; y (5) por el quinto año $95,198.17.[3]

Los Alisios acotó que habían sido infructuosas las gestiones de cobro y que II2 continuaba ocupando Las Nubes, por lo que solicitó el desahucio y el pago de lo adeudado con un total de $390,613.29; más las costas, gastos, honorarios e intereses de $3,906.13 mensuales, a partir de la presentación de la reclamación.

Luego, el 13 de abril de 2026, Los Alisios informó al TPI acerca del diligenciamiento de los emplazamientos y citación por desahucio, mediante entrega personal.[4] Cabe señalar que ambos emplazados, II2 y el señor Prado del Valle, recibieron la debida citación para la vista de desahucio señalada para el 22 de abril de 2026 a las 9:00 de la mañana. Posteriormente, de manera conjunta, las partes litigantes solicitaron reseñalar la audiencia y el TPI lo concedió.[5]

La vista de desahucio se celebró el 20 de mayo de 2026.[6] En corte abierta, Los Alisios desistió de las alegaciones de daños, por lo que el TPI dictó una *Sentencia Parcial*, en la que desestimó sin perjuicio dicha causa de acción.[7] Además, surge de la *Minuta* de la mañana que, durante el procedimiento, II2 solicitó la conversión del procedimiento de desahucio

---

[3] *Id.*, en particular, *Rider A*, acápite 3.
[4] Entrada 6 SUMAC-TPI.
[5] Entradas 15-16 SUMAC-TPI.
[6] Refiérase a las *Minutas* en las entradas 31 y 34 SUMAC-TPI.
[7] Entrada 21 SUMAC-TPI.

a la vía ordinaria, para presentar unas defensas, como el derecho de retención por mejoras y reparaciones urgentes realizadas en Las Nubes. El TPI rehusó conceder la petición.[8]

En cuanto a la prueba, por la parte demandante, testificó la Sra. Mariana Ortiz Blanes, coadministradora de Los Alisios y quien suscribió el acuerdo contractual.[9] Los Alisios sometió la evidencia documental atinente: (1) el contrato de arrendamiento *Lease* de 25 de abril de 2025; (2) carta de Los Alisios a II2 de 25 de abril de 2025, por virtud de la cual se redujo el canon a $3,892.74; y (3) estado de cuenta *Tenant Statement* de 17 de abril de 2026.[10]

Por la parte demandada, declaró el señor Prado del Valle. La parte demandada ofreció y se admitieron en evidencia varias fotografías del inmueble, una cadena de correos electrónicos y un cheque por $4,000.00 de 22 de julio de 2025, pagadero a nombre de Héctor Berríos.[11] Se desprende de la *Minuta* de la tarde que el TPI rechazó la presentación del testimonio del Sr. Brian Llanos, empleado de mantenimiento de Los Alisios, por lo que el demandado hizo una oferta de prueba.[12]

Evaluada la evidencia ante sí, el 22 de mayo de 2026, el TPI notificó la *Sentencia* apelada.[13] En su dictamen, consignó las siguientes determinaciones de hechos:

1. La Parte Demandada actualmente reside la Propiedad.
2. La Parte Demandante es dueña de la Propiedad.

---

[8] Entrada 31 SUMAC-TPI.

[9] II2 no tramitó una transcripción de la prueba oral.

[10] Entrada 10 SUMAC-TPI. Exhibits 1-3 de la parte demandante (se excluyó el documento de facturas impagas); refiérase al *Registro de Evidencia,* entrada 31 SUMAC-TPI.

[11] Entrada 22 SUMAC-TPI. Exhibits 1A, 1B, 1C, 2, 3A, 3B, 4-6 de la parte demandada. Además, se marcó como identificación otra prueba documental consistente en fotografías de la propiedad arrendada y capturas de pantalla de conversaciones entre el demandado y el Sr. Brian Llanos, empleado de mantenimiento de Los Alisios: Identificación 1-8; refiérase al *Registro de Evidencia,* entrada 34 SUMAC-TPI.

[12] La oferta de prueba testifical iba dirigida a evidenciar "las quejas, reclamaciones y conversaciones que se tuvieron en cuanto a las reparaciones del local, lo que se necesitaba, lo que hacía y todo lo que hizo él, lo que le correspondía o no le correspondía y las instrucciones, si alguna, que recibía en el camino de la parte demandante en cuánto a cuándo y cómo y de qué manera se atenderían las reparaciones y quien las costearía y que, en efecto, no era la parte demandada quien provocó los daños o goteras ni fue el encargado de repararlo. También incluía que ese testigo podía dar fe de cómo se atendía el diario de la operación de esto en representación de la parte demandante y de que, a pesar de que el contrato decía que las comunicaciones serían con una persona en específico". Véase, *Minuta*, entrada 34 SUMAC-TPI.

[13] Entrada 27 SUMAC-TPI.

3. La señora Mariana Ortiz Blanes en la coadministradora de la Parte Demandante.

4. La Parte Demandante y la Parte Demandada otorgaron un contrato de arrendamiento comercial para el alquiler de la Propiedad el 25 de abril de 2025 (en adelante, el "Contrato de Arrendamiento").

5. El Contrato de Arrendamiento cubre del 1 de mayo de 2025 al 30 de abril de 2030 y luego de ese término, con la posibilidad de ser renovado.

6. El Contrato de Arrendamiento establecía un canon de arrendamiento para el primer año de $7,167.55 por el uso de 5,190.74 pies cuadrados.

7. El 25 de abril de 2025, la Parte Demandante y la Parte Demandada suscribieron una carta enmendando el canon de arrendamiento a $3,892.74 por el uso reducido de la Propiedad a 3,892.74 pies cuadrados, por trabajos de sellado y refuerzos que se estaban realizando a la Propiedad (en adelante, la "Enmienda de Renta Reducida").

8. La cláusula 14.01(a) del Contrato de Arrendamiento dispone que el atraso en cualquier pago del canon de arrendamiento será causa para dar por terminado el Contrato de Arrendamiento.

9. El Contrato de Arrendamiento no condiciona el pago del canon de arrendamiento.

10. Según el estado de cuenta al 17 de abril de 2026, la deuda acumulada al 6 de abril de 2026 por el Incumplimiento asciende a $22,500.92 (en adelante, el "Estado de Cuenta").

11. Del Estado de Cuenta surgen múltiples cargos por mora (Rent Late Fees) desde agosto del 2025 hasta abril del 2026.

12. En la Demanda presentada el 7 de abril de 2026 se alega que la deuda acumulada por la falta del pago del canon de arrendamiento y cargos en atraso suma $16,875.69.

13. De la Enmienda Temporera al Contrato surge que el canon de arrendamiento es $3,892.74 y nada se dispone de cualquier otro cargo.

14. El 9 de marzo de 2025, la Parte Demandante le recordó a la Parte Demandada que se encontraba en incumplimiento de contrato mediante mensaje de correo electrónico.

15. La Parte Demandada y Mariana Ortiz Blanes se reunieron el 25 de marzo 2026 (la "Reunión del 25 de marzo de 2026").

16. La Parte Demandada admite que en la Reunión del 25 de marzo de 2026 reconoció que tenía meses "pendientes" y quería ponerse al día.

17. El 25 de marzo de 2026 la Parte Demandada envió un correo electrónico a la Parte Demandante al culminar la reunión.

18. La Parte Demandada incumplió con el Contrato de Arrendamiento ante los múltiples atrasos y falta de pago del canon de arrendamiento (el "Incumplimiento").

19. El Incumplimiento tuvo el efecto de terminar el Contrato de Arrendamiento.

Al tenor de los enunciados citados, el TPI concluyó que no podía hacer una determinación sobre la suma adeudada, toda vez que Los Alisios no explicó el cómputo de los gastos operacionales. Al palio del Artículo 627 del Código de Enjuiciamiento Civil, *infra*, concluyó que no procedía acumular la causa de acción de cobro de dinero. Consiguientemente, desestimó la causa de acción, sin perjuicio de la presentación de un pleito independiente. No obstante, a la acción de desahucio contra II2, la declaró *ha lugar*. Luego de fijar el monto de la fianza de apelación en $3,892.74, satisfecha por II2, advirtió al demandado a instar el presente recurso en un término de cinco días, de conformidad con el Artículo 629 del Código de Enjuiciamiento Civil, *infra*.

Oportunamente, II2 acudió ante nos y señaló la comisión de los siguientes errores:

> i. Erró el Honorable TPI al tramitar el caso *motu proprio* bajo el procedimiento sumario, sin haber sido solicitado por la demandante y al denegar la conversión del caso al procedimiento ordinario.

> ii. Erró el Honorable TPI en su análisis del tipo de defensas que podía presentar la apelante, al limitar la prueba que podía presentar la apelante a esos fines y al determinar que procedía el desahucio sin recibir prueba del incumplimiento previo y constante de la apelada que daba paso a la defensa de *exceptio non adimpleti contractus*, al derecho de retención como impedimentos para la causa de acción de cobro y de desahucio y a los derechos a una rebaja proporcional que le asisten bajo el Artículo 1349 (c) del Código Civil de 2020.

> iii. Erró el Honorable TPI al declarar *Con Lugar* la Demanda de Desahucio basada en una reclamación de cobro de dinero que no pudo ser calculada y cuya acumulación desestimó sin perjuicio.

En cumplimiento de nuestra *Resolución* de 3 de junio de 2026, Los Alisios presentó el *Alega[t]o de la parte apelada* el día 11 siguiente. Con el beneficio de ambas comparecencias, estamos en disposición de resolver.

## II.

El desahucio es el remedio que tiene el propietario de un inmueble para recobrar judicialmente su posesión, de aquel arrendatario o precarista que se mantiene en ella sin pagar canon alguno. *Markovic v.*

*Meldon y otro*, 216 DPR __; 2025 TSPR 99, pág. 4; *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018). Por lo general, se reconoce como una acción especial de carácter sumario que responde al interés gubernamental de atender de manera expedita la reivindicación de la posesión y el disfrute de un bien inmueble. *Markovic v. Meldon y otro*, *supra*, pág. 4; *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 234-235 (1992).

El trámite del desahucio sumario se rige por los Artículos 620-634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838. El alcance de las controversias que pueden ventilarse en este procedimiento sumario es limitado, ya que "lo único que se intenta recobrar mediante la referida acción sumaria es la posesión del inmueble". *Markovic v. Meldon y otro*, *supra*, pág. 8; *Crespo Quiñones v. Santiago Velázquez*, 176 DPR 408, 431 (2009). Sin embargo, el Artículo 627 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2829, permite que la demanda de desahucio se fundamente en la falta de pago del canon, aunque sin perder su naturaleza sumaria. En estas instancias, la prueba admitida se circunscribe a los recibos o cualquier otro documento en que conste haberse verificado el pago. *Id.*

Claro está, de existir defensas afirmativas relacionadas con la acción de desahucio, en casos apropiados, la parte demandada puede solicitar la conversión del proceso al trámite ordinario. *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 10 (2016); *Jiménez v. Reyes*, 146 DPR 657 (1998). La petición no puede acarrear dilaciones innecesarias y la parte demandada debe establecer un caso *prima facie* de su defensa. *Markovic v. Meldon y otro*, *supra*, págs. 8-9. "En tal caso, la reclamación estará sujeta a las reglas de la litigación civil ordinaria, excluyendo la legislación especial que reglamenta el desahucio sumario y sus restringidos plazos y condiciones". *ATPR v. SLG Volmar-Mathieu*, *supra*, pág. 10. Al respecto, el Tribunal Supremo ha pautado que corresponde a la parte demandada demostrar satisfactoriamente el mérito de su reclamo y presentar prueba

que dé al ánimo del juzgador una razonable certeza de las defensas invocadas. *Mora Dev. Corp. v. Sandín*, 118 DPR 733, 750 (1987).

En atención a la jurisprudencia citada por II2, a modo de ejemplo, discutimos algunas defensas meritorias para la conversión al procedimiento ordinario.

El caso *Más et al v. Borinquen Sugar Co.*, 18 DPR 304 (1912), se devolvió ante la primera instancia judicial, entre otros asuntos, ante una alegación de que era imputable al arrendador la imposibilidad de entregar el pago. En *Brunet v. Corte*, 45 DPR 901 (1933), el alto foro revocó para atender la defensa de los demandados, quienes negaron la existencia de un contrato verbal de arrendamiento e impugnaron la titularidad del inmueble en controversia.

En *Lamar v. Varga Rosado*, 130 DPR 203 (1992), el pleito se convirtió a uno ordinario, toda vez que existían cuestiones complejas a dirimir, como la validez o no de un contrato de arrendamiento, en el que se enajenó parte de un elemento común general de una propiedad sujeta al régimen de propiedad horizontal. De otro lado, en *Jiménez v. Reyes*, 146 DPR 657 (1998), los litigantes no tenían una relación contractual entre arrendador y arrendatario. La demandada, quien vivía la residencia de su hija fallecida desde décadas antes que el demandante adquiriera el inmueble por compraventa, era poseedora de buena fe.

En el caso *Mora Dev. Corp. v. Sandín, supra*, el alto foro acotó que el incumplimiento de un casero participante en el programa de subsidios federales con su obligación legal y contractual de ajustar la renta constituía una defensa oponible al arrendador en el juicio sumario. Igualmente, en *Turabo Ltd. Partnership v. Velardo Ortiz, supra*, nuestro Tribunal Supremo aceptó como válida la defensa de incumplimiento del arrendador con disposiciones estatutarias y reglamentarias federales, aplicables a los contratos de arrendamiento de los inquilinos quienes eran recipientes de un programa de beneficencia social.

En lo aplicable al caso de marras, en *Marín v. Montijo,* 109 DPR 268 (1977), el Tribunal Supremo, si bien suspendió los efectos de la sentencia de desahucio hasta determinar la cantidad adeudada al inquilino por concepto de reparaciones necesarias hechas con el consentimiento expreso del arrendador, enfatizó lo siguiente:

> … tratándose el desahucio de un procedimiento de naturaleza sumaria de gran utilidad, no puede derrotarse con sólo aducir que se han hecho mejoras necesarias con el consentimiento expreso del arrendador. Al igual que sucede cuando se plantea un conflicto de título, no basta una mera alegación para que prospere la defensa. Por ello le corresponde al demandado, más que alegar, demostrar satisfactoriamente el mérito de su reclamo. Sin causar dilaciones en el proceso debe, en el momento oportuno, presentar prueba que lleve al ánimo del juzgador la razonable certeza de que habrá de demostrar en su día que con el expreso consentimiento del arrendador demandante, ha ejecutado mejoras necesarias en la propiedad arrendada, cuyo costo no le ha sido satisfecho. (Citas omitidas). *Id.,* pág. 278.

Por último, independientemente que el proceso sea sumario u ordinario, en ambos corresponde la fijación y el pago de la fianza en apelación, la cual debe instarse en un plazo jurisdiccional de cinco días, sujeto a la Regla 68.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 68.1. Véanse, Arts. 630-631 del Cód. Enj. Civ., 32 LPRA secs. 2832 y 2835; *Markovic v. Meldon y otro, supra,* págs. 18; *Adm. Vivienda Pública v. Vega Martínez, supra,* págs. 244-245; *ATPR v. SLG Volmar-Mathieu, supra,* págs. 15-16.

### III.

En el primer señalamiento de error, II2 alega que el TPI se equivocó al tramitar el caso *motu proprio* bajo el procedimiento sumario y denegar la conversión, "sin haber sido solicitado por [el] demandante y al denegar la conversión del caso al procedimiento ordinario". A su vez, el apelante plantea en el segundo error que el TPI incidió al limitar las defensas y la evidencia presentada en la vista sumaria. Alude al presunto incumplimiento previo por parte de Los Alisios que, a su parecer, daban

paso a la defensa de *exceptio non adimpleti contractus*,[14] al derecho de retención y a una rebaja proporcional.

Por su relación intrínseca, discutiremos en conjunto ambas contenciones.

En el expediente electrónico ante nuestra atención, inicialmente, Los Alisios sometió proyectos de emplazamientos de procesos ordinarios.[15] Observamos también que los epígrafes de las notificaciones que emite la Secretaría del TPI aluden a un procedimiento ordinario. Igualmente, el asunto en el epígrafe de la *Sentencia Parcial* se refiere al proceso ordinario. Por su parte, en el epígrafe de la *Sentencia*, se consignaron las causas de acción de *cobro de dinero* y la de *desahucio* sin más especificidad.

No obstante lo anterior, el *Emplazamiento y Citación por Desahucio* expedido por la Secretaría y diligenciado el 13 de abril de 2026,[16] mediante el cual el TPI adquirió jurisdicción sobre II2, se desprende el carácter sumario del procedimiento. Este documento es distinto al formulario de emplazamiento en los casos ordinarios. De hecho, previo a la celebración de la vista de desahucio, el apelante tuvo un aviso expreso del trámite expedito. Específicamente, el 22 de abril de 2026, la parte apelada instó una *Moción para orden*,[17] en la que indagó sobre la contestación de la reclamación. En respuesta, en la misma fecha, el TPI consignó palmariamente que "el presente caso fue presentado bajo el trámite sumario para casos de desahucio...".[18] Decidió que las alegaciones se atenderían en el juicio en su fondo.

---

[14] Como se sabe, la defensa *exceptio non rite adimpleti contractus* es oponible al demandante, que pretende exigir el cumplimiento de una obligación a pesar de que él ha cumplido parcial o defectuosamente con su prestación. El efecto de la aplicación de la excepción es que el demandado no estará obligado a cumplir con su parte hasta tanto el demandante cumpla con su prestación totalmente o libre de defectos. *Álvarez v. Rivera*,165 DPR 1, 21-22 (2005).

[15] Véase, entrada 2 SUMAC-TPI.

[16] Véanse, entradas 3-4 y 6 SUMAC-TPI. Surge del SUMAC-TPI que al pliego de *Emplazamiento y Citación por Desahucio* se anejó una hoja informativa denominada *Representación legal durante un proceso judicial de desahucio* que ilustra sobre el procedimiento expedito, disponible en el expediente electrónico.

[17] Entrada 17 SUMAC-TPI.

[18] Entrada 18 SUMAC-TPI.

Es forzoso concluir que el apelante, representado debidamente por abogado,[19] sabía o debió saber sobre la naturaleza sumaria del procedimiento, al menos, desde un mes antes de la celebración de la vista.

Acerca de las alegaciones de daños renunciadas por Los Alisios que supuestamente tornaban en ordinario el pleito, estimamos que, por sí solas, no convertían el procedimiento en ordinario. Recuérdese que la *Demanda* incluía la acción de cobro de dinero, permisible en la tramitación sumaria y avisada en ambos documentos de *Emplazamiento y Citación por Desahucio* diligenciados. Huelga mencionar que el origen de las sumas reclamadas en estas alegaciones se asentaba en las disposiciones pactadas en el tercer acápite del *Rider A*, en el *Lease*, no en cuestiones que implicaran prueba ajena al contrato de arrendamiento. En cuanto a la indagación para la contestación de la *Demanda* por parte del apelado antes reseñada, se sabe que el trámite sumario no impide la presentación de una alegación responsiva. Incluso, existe el formulario OAT-1801, diseñado para la contestación a la demanda de desahucio en el procedimiento sumario. En esencia, el documento requiere que la parte demandada alegue que, en efecto, realizó el pago y niegue un conflicto de título.

En este caso, el apelante indica que "se personó a la vista señalada preparad[o] para coordinar un trámite bajo el procedimiento ordinario y calendarizar el descubrimiento de prueba pertinente al mismo".[20] Sin embargo, el reclamo fue tardío y, en el ejercicio de su discreción, el TPI estaba compelido a observar las pautas del Código de Enjuiciamiento Civil. Recaía sobre II2 la obligación de proceder diligentemente, sin causar dilaciones innecesarias, así como el peso de la prueba, por lo que, en el momento oportuno, debió presentar evidencia que persuadiera el ánimo del juzgador a una razonable certeza de que podría demostrar el

---

[19] Entrada 11 SUMAC-TPI.
[20] Véase, *Apelación*, pág. 21.

mérito de sus defensas. Empero, el expediente está huérfano de una petición oportuna del apelante para la conversión al procedimiento ordinario. Esto no ocurrió hasta el día de la vista de 20 de mayo de 2026. Incluso, al día siguiente de la audiencia, instruido por el TPI en corte abierta, fue que unió la prueba al expediente electrónico. La evidencia de Los Alisios constaba desde el 17 de abril de 2026.

En suma, el mismo día de la vista sumaria de desahucio, el apelante pretendió presentar prueba para respaldar unas defensas instadas por primera vez, sobre un alegado incumplimiento del apelado con sus obligaciones contractuales, así como invocar el derecho de retención. La prueba documental admitida e identificada de la parte apelante constaba de fotografías de la propiedad y mensajes de texto. La evidencia testifical ofrecida recaía en el testimonio del encargado de mantenimiento de Las Nubes.[21] Tal como afirma en su recurso apelativo, "trató de pasar prueba sobre por qué las reparaciones realizadas por ésta se consideraban necesarias, que se habían notificado en múltiples ocasiones a la [parte] apelada y que se realizaron con su conocimiento y consentimiento, bajo la representación de que posteriormente le serían acreditadas".[22] Sin ánimo de prejuzgar el derecho de crédito que pueda tener II2, si alguno, opinamos que, ante el tipo de procedimiento que observaba el TPI y en el ejercicio de su discreción no existen los elementos para cambiar su decisión de descartar evidencia impertinente a la causa de desahucio sumario. Es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original y citas omitidas). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

---

[21] Refiérase a las notas al calce 11 y 12 de este dictamen.
[22] Véase, *Apelación*, pág. 6.

En la causa del título, según las alegaciones de la parte apelada, II2 ha continuado operando su negocio de gimnasio en la propiedad arrendada, sin satisfacer las rentas, lo que hizo necesaria la intervención judicial para su desalojo. Iniciado el pleito, claramente sumario como señalamos antes, II2 no solicitó oportunamente la conversión del procedimiento por la vía ordinaria. Como narramos, las acciones pecuniarias por concepto de daños y cánones, ligadas a los acuerdos contractuales pactados entre los litigantes, fueron desistidas y desestimadas, sin perjuicio. Es decir, estas cuestiones dinerarias no fueron objeto de la *Sentencia* impugnada, la cual se limitó a conceder el desalojo. A nuestro juicio, II2 no brindó defensas equiparables a la jurisprudencia citada. Esto es, no estableció un caso *prima facie*, tendente a demostrar al juzgador los méritos de las defensas invocadas, y justificar la conversión, mucho menos tardíamente. Además, en su día, en caso de que Los Alisios interponga una reclamación dineraria, II2 podrá plantear las defensas apropiadas, al amparo de la doctrina civil general estatuida en el Código Civil de Puerto Rico. Mientras tanto, una expresión nuestra a esos efectos seria prematura y especulativa.

En fin, en lo que sí nos compete, conforme lo exige el procedimiento sumario, somos del criterio que la prueba ofrecida por el apelante era irrelevante al pleito sumario de desahucio. Al fin y al cabo, II2 no pudo revertir determinaciones, tales como que Los Alisios le hizo saber que estaba en incumplimiento de pago ni su propia admisión de que tenía meses "pendientes". Tampoco demostró el pago de los cánones adeudados, a los que se obligó por virtud del contrato de arrendamiento. Por consiguiente, el apelado promovió y el TPI concedió la acción de desahucio. A la luz de lo anterior, concluimos que los errores señalados no se cometieron.

En el tercer señalamiento, II2 arguye que el TPI erró al conceder el desahucio, en una reclamación de cobro de dinero, cuya acumulación desestimó sin perjuicio.

Es meritorio reiterar que, a modo de excepción, el procedimiento sumario de desahucio permite la acumulación de la causa de acción de cobro de dinero. Art. 627 del Cód. de Enj. Civ., *supra*. Ahora, de ninguna forma se interpretará la tramitación conjunta de ambas acciones en perjuicio de las garantías y términos establecidos en el Código de Enjuiciamiento Civil. *Id.* En estos casos, la prueba de ambas partes comprenderá los hechos fundamentales de la cuestión principal: el pago o no de los cánones de arrendamiento pactados. *Id.*

En este caso, el TPI justipreció que Los Alisios no explicó a cabalidad el cómputo de los gastos operacionales, lo que impedía hacer una determinación de la cuantía adeudada por concepto de cánones de arrendamiento. En consecuencia, desestimó la causa de acción dineraria, ya que surge del *Lease*, que ambas partidas —cánones y gastos operacionales— están estrechamente relacionadas. Estimamos que el TPI no erró al desestimar la causa de acción de cobro de dinero, sin perjuicio de una reclamación independiente, y suscribirse a la acción de desahucio.

**IV.**

Por los fundamentos expuestos, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones